Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**SEPTEMBER 2017**

E-Filing Number: 1709014058

**000577**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SIENA VENTURES LLC | ABC CAPITAL INVESTMENTS LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 576 VALLEY ROAD #311 WAYNE NJ 07470 | 1218 N. MARSHALL STREET PHILADELPHIA PA 19122 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SV PA PHI 1 LLC | ABC CAPITAL REALTY LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 576 VALLEY ROAD #311 WAYNE NJ 07470 | 1218 N. MARSHALL STREET PHILADELPHIA PA 19122 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| BTV PHIL LLC | NEW PHILLY CONSTRUCTION LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 576 VALLEY ROAD #311 WAYNE NJ 07470 | 1218 N. MARSHALL STREET PHILADELPHIA PA 19122 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 4 | 8 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal <br> [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less <br> [X] More than $50,000.00 | [ ] Arbitration <br> [ ] Jury <br> [ ] Non-Jury <br> [ ] Other: | [ ] Mass Tort <br> [ ] Savings Action <br> [ ] Petition | [X] Commerce   [ ] Settlement <br> [ ] Minor Court Appeal   [ ] Minors <br> [ ] Statutory Appeals   [ ] W/D/Survival |

CASE TYPE AND CODE

10 - CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

SEP **08** 2017

**M. BRYANT**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES     NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: SIENA VENTURES LLC , SV PA PHI 1
LLC , BTV PHIL LLC , BTV PHIL 3 LLC

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| PETER H. LEVAN JR | LEVAN LAW GROUP LLC <br> ONE LOGAN SQUARE <br> 27TH FLR. <br> PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)561-1500 | (215)827-5390 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 83456 | plevan@levanlawgroup.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| PETER LEVAN JR | Friday, September 08, 2017, 10:47 am |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF PLAINTIFFS:

1. SIENA VENTURES LLC
   576 VALLEY ROAD #311
   WAYNE NJ 07470
2. SV PA PHI 1 LLC
   576 VALLEY ROAD #311
   WAYNE NJ 07470
3. BTV PHIL LLC
   576 VALLEY ROAD #311
   WAYNE NJ 07470
4. BTV PHIL 3 LLC
   576 VALLEY ROAD #311
   WAYNE NJ 07470

## COMPLETE LIST OF DEFENDANTS:

1. ABC CAPITAL INVESTMENTS LLC
   1218 N. MARSHALL STREET
   PHILADELPHIA PA 19122
2. ABC CAPITAL REALTY LLC
   1218 N. MARSHALL STREET
   PHILADELPHIA PA 19122
3. NEW PHILLY CONSTRUCTION LLC
   1218 N. MARSHALL STREET
   PHILADELPHIA PA 19122
4. AMIR VANA
   203 KRESSON ROAD
   VORHEES NJ 08043
5. JASON P. WALSH
   ALIAS: JAY WALSH
   860 N. LEITHGOW STREET
   PHILADELPHIA PA 19123
6. YARON ZER
   165 WEST GIRARD AVENUE
   PHILADELPHIA PA 19123
7. ARIEL TAUBE
   847 NORTH LAWRENCE STREET
   PHILADELPHIA PA 19123
8. HOWARD A. GREENBERG
   125 AUGUST LANE
   LANSDALE PA 19446

## COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

_____    1.    Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

**X**    2.    Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

     _____    a.    Uniform Commercial Code transactions;

     _____    b.    Purchases or sales of business or the assets of businesses;

     **X**    c.    Sales of goods or services by or to business enterprises;

     _____    d.    Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

     _____    e.    Surety bonds;

     **X**    f.    Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

     _____    g.    Franchisor/franchisee relationships.

_____    3.    Actions relating to trade secret or non-compete agreements;

**X**    4.    "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

_____    5.    Actions relating to intellectual property disputes;

_____    6.    Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

_____    7.    Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

_____    8.    Actions relating to corporate trust affairs;

_____    9.    Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

_____    10.    Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

**LeVAN LAW GROUP LLC**
By: Peter H. LeVan, Jr. (Atty ID No. 83456)
One Logan Square – 27th Floor
Philadelphia, PA 19103
215.561.1500
215.827.5390 (facsimile)
plevan@levanlawgroup.com
*Attorneys for Plaintiffs*

SEEKING ASSIGNMENT TO
THE COMMERCE PROGRAM

*Filed and Attested by the
Office of Judicial Records
08 SEP 2017 10:47 am*

THIS IS **NOT** AN ARBITRATION CASE

---

| | |
|---|---|
| SIENA VENTURES, LLC<br>576 Valley Road #311<br>Wayne, NJ 07470 | **COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY** |
| SV PA PHI 1 LLC<br>576 Valley Road #311<br>Wayne, NJ 07470 | SEPTEMBER TERM 2017<br><br>NO._____ |
| BTV PHIL LLC<br>576 Valley Road #311<br>Wayne, NJ 07470 | |
| BTV PHIL 3 LLC<br>576 Valley Road #311<br>Wayne, NJ 07470 | **JURY TRIAL DEMANDED** |
| *Plaintiffs*<br>v. | |
| ABC CAPITAL INVESTMENTS, LLC<br>1218 N. Marshall Street<br>Philadelphia, PA 19122 | |
| ABC CAPITAL REALTY LLC<br>1218 N. Marshall Street<br>Philadelphia, PA 19122 | |
| NEW PHILLY CONSTRUCTION LLC<br>1218 N. Marshall Street<br>Philadelphia, PA 19122 | |
| AMIR VANA<br>203 Kresson Road<br>Voorhees, NJ 08043 | |
| *(continued)* | |

JASON P. WALSH                          :
860 North Leithgow Street               :
Philadelphia, PA 19123                  :
                                        :
YARON ZER                               :
165 West Girard Avenue                  :
Philadelphia, PA 19123                  :
                                        :
ARIEL TAUBE                             :
847 North Lawrence Street               :
Philadelphia, PA 19123                  :
                                        :
HOWARD A. GREENBERG                     :
125 August Lane                         :
Lansdale, PA 19446                      :
                                        :
             *Defendants*               :
_____ :

## NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the
following pages, you must take action within twenty (20) days after this complaint and
notice are served, by entering a written appearance personally or by attorney and filing in
writing with the court your defenses or objections to the claims set forth against you.  You
are warned that if you fail to do so the case may proceed without you and a judgment may
be entered against you by the court without further notice for any money claimed in the
complaint or for any other claim or relief requested by the plaintiff.  You may lose money or
property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A
LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH
BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Philadelphia Bar Association Lawyer
Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

Case ID: 170900577

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

Case ID: 170900577

**LeVAN LAW GROUP LLC**
By: Peter H. LeVan, Jr. (Atty ID No. 83456)
One Logan Square – 27th Floor
Philadelphia, PA 19103
215.561.1500
215.827.5390 (facsimile)
plevan@levanlawgroup.com
*Attorneys for Plaintiffs*

SEEKING ASSIGNMENT TO THE
THE COMMERCE PROGRAM


THIS IS **NOT** AN ARBITRATION CASE

---

SIENA VENTURES, LLC
576 Valley Road #311
Wayne, NJ 07470

SV PA PHI 1 LLC
576 Valley Road #311
Wayne, NJ 07470

BTV PHIL LLC
576 Valley Road #311
Wayne, NJ 07470

BTV PHIL 3 LLC
576 Valley Road #311
Wayne, NJ 07470

Plaintiffs
v.

ABC CAPITAL INVESTMENTS, LLC
1218 N. Marshall Street
Philadelphia, PA 19122

ABC CAPITAL REALTY LLC
1218 N. Marshall Street
Philadelphia, PA 19122

NEW PHILLY CONSTRUCTION LLC
1218 N. Marshall Street
Philadelphia, PA 19122

AMIR VANA
203 Kresson Road
Voorhees, NJ 08043

(continued)

: **COURT OF COMMON PLEAS**
: **PHILADELPHIA COUNTY**
:
: SEPTEMBER TERM 2017
:
: NO._____
:
:
:
: **JURY TRIAL DEMANDED**

JASON P. WALSH                          :
860 North Leithgow Street               :
Philadelphia, PA 19123                  :
                                        :
YARON ZER                               :
165 West Girard Avenue                  :
Philadelphia, PA 19123                  :
                                        :
ARIEL TAUBE                             :
847 North Lawrence Street               :
Philadelphia, PA 19123                  :
                                        :
HOWARD A. GREENBERG                     :
125 August Lane                         :
Lansdale, PA 19446                      :
                                        :
              *Defendants*              :
_____ :

## COMPLAINT

Plaintiffs Siena Ventures, LLC, SV PA PHI 1 LLC, BTV PHIL LLC and BTV PHIL 3 LLC

(collectively, "Plaintiffs") make the following allegations in support of their claims against

ABC Capital Investments, LLC ("ABC Capital"), ABC Capital Realty LLC ("ABC Capital

Realty"), New Philly Construction LLC ("New Philly"), Amir Vana ("Vana"), Jason P. Walsh

("Walsh"), Yaron Zer ("Zer"), Ariel Taube ("Taube") and Howard A. Greenberg ("Greenberg"

and, collectively with ABC Capital, ABC Capital Realty, New Philly, Vana, Walsh, Zer and

Taube, "Defendants"):

I.    **NATURE OF THE ACTION**

1.     This is an action for multiple breaches of contract, breach of fiduciary duty,

conversion, tortious interference with contract, negligent misrepresentation, fraud, civil

conspiracy, and declaratory relief arising from Defendants' unlawful and improper conduct

in connection with the management, remodeling and leasing activities of numerous

residential properties in the greater Philadelphia area.

2

2.     Plaintiff Siena Ventures, LLC is in the business of purchasing, owning, rehabilitating, remodeling, and leasing residential properties throughout the country.

3.     Defendant ABC Capital Investments, LLC ("ABC Capital") is an entity that publicly describes itself as "a one-stop shop for overseas and US real estate clients" that "locate[s], renovate[s], and manage[s] properties for hands off international/national clients." *See* http://www.abccapitalinvestments.com/about-abc-capital (last accessed September 8, 2017).

4.     Capital Realty LLC ("ABC Realty"), an affiliate of ABC Capital, is an entity that provides property management services to various clients, including the management of residential properties, screening and selecting suitable tenants, collecting and disbursing security deposits and rental payments, and maintaining the properties as necessary.

5.     Defendant New Philly Construction LLC ("New Philly" and, together with ABC Capital and ABC Realty, the "ABC Entities"), an affiliate of ABC Capital and ABC Realty, is an entity that provides residential construction and renovation services.  New Philly publicly advertises itself as "the leader in single family and multifamily renovations in Philadelphia." *See* http://newphillyconstruction.abccapitalinvestments.com (last accessed September 8, 2017).

6.     Defendants Vana, Walsh, Zer, and Taube are owners of the ABC Entities. Defendant Greenberg is the licensed real estate broker for one or more of the ABC Entities.

7.     In 2016, Plaintiffs entered into a series of written and oral agreements with the ABC Entities pursuant to which the ABC Entities agreed to manage and rehabilitate numerous residential properties owned by Plaintiffs throughout the greater Philadelphia area.

8.     By May 2017, however, the relationship between Plaintiffs and the ABC Entities had soured and the parties jointly agreed to terminate their numerous business relationships.

9.     Notwithstanding the terms of the parties' management contract and the requirements of Pennsylvania law, ABC Capital Realty to date has unjustifiably and unlawfully refused to release any of the rental payments and security deposits it had collected, and continues to hold, on behalf of Plaintiffs.

10.    Additionally, Defendant New Philly performed deficient, unworkmanlike and unacceptable reconstruction services in numerous of Plaintiffs' residential properties.  By way of example only, New Philly constructed unsafe, uneven floors, failed to install or connect HVAC units, failed to install or connect electric and water meters in numerous residential properties, and claimed to have performed – and demanded and received payment for – work that it had not, in fact, completed.   New Philly's unlawful actions required Plaintiffs to incur substantial additional costs to remediate the reconstruction deficiencies and has resulted in the loss of tenants and damage to Plaintiffs' business reputations.

11.    Additionally, all Defendants conspired to and engaged in a pattern of fraudulent and unlawful behavior designed to further extract money from Plaintiffs. Among other things, Defendants made false and outrageous claims of multiple thefts at the residential properties New Philly was rehabbing, falsely claimed to have obtained certain licenses and approvals from the Department of Licenses and Inspections of the City of Philadelphia ("L&I"), attempted to lease Plaintiffs' properties without authorization after the parties' relationship had been jointly terminated, attempted to collect rental payments

4

from tenants after the parties' relationship had been jointly terminated, and demanded and received payment for numerous rehabilitation and reconstruction work that New Philly had not performed.

12.　　As a result of Defendants' unlawful conduct, Plaintiffs bring this action asserting claims for breaches of contract, breaches of fiduciary duty, conversion, tortious interference with contract, negligent misrepresentation, fraud, civil conspiracy and declaratory relief.

## II.　**PARTIES**

### A.　**Plaintiffs**

13.　　Plaintiff Siena Ventures LLC ("Siena") is a Delaware limited liability company with a principal place of business in Wayne, New Jersey, that is in the business of purchasing, owning, rehabilitating, remodeling and leasing residential properties throughout the country, including the greater Philadelphia area.  Siena is wholly owned by non-parties David Gabbay and Franco Pacelli.

14.　　Plaintiff SV PA PHI 1 LLC is a Delaware limited liability company with a principal place of business in Wayne, New Jersey, that is in the business of purchasing, owning, rehabilitation, remodeling and leasing residential properties within the greater Philadelphia area.  SV PA PHI 1 LLC is wholly owned by non-parties David Gabbay and Franco Pacelli.

15.　　Plaintiffs BTV PHIL LLC and BTV PHIL 3 LLC are each Delaware limited liability companies with principal places of business in Wayne, New Jersey, that are in the business of purchasing, owning, rehabilitation, remodeling and leasing residential

Case ID: 170900577

properties within the greater Philadelphia area.  BTV PHIL LLC and BTV PHIL 3 LLC are each wholly owned by non-party Franco Pacelli.

16.     Throughout this Complaint, SV PA PHI 1 LLC, BTV PHIL LLC and BTV PHIL 3 LLC will be collectively referred to as the "Related LLCs" and, together with Siena, as "Plaintiffs."

### B.     Defendants

17.     Defendant ABC Capital Investments, LLC ("ABC Capital") is a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania.

18.     Defendant ABC Capital Realty LLC ("ABC Realty") is a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania.  ABC Capital Realty is an affiliate of ABC Capital and New Philly.

19.     Defendant New Philly Construction LLC ("New Philly") is a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania. New Philly is an affiliate of ABC Capital and ABC Realty.

20.     Defendant Amir Vana ("Vana") is an individual who resides at 203 Kresson Road in Vorhees, New Jersey.  Defendant Vana is the Chief Executive Officer ("CEO") of ABC Capital, ABC Realty, and New Philly and is an owner member of the ABC Entities.  *See* http://www.abccapitalinvestments.com/team/ (last accessed September 8, 2017).

21.     Defendant Jason P. Walsh ("Walsh") is an individual who resides at 860 North Leithgow Street in Philadelphia, Pennsylvania.  Defendant Walsh is the Chief Operating Officer ("COO") of ABC Capital, ABC Realty, and New Philly and is an owner member of the ABC Entities.  *See* http://www.abccapitalinvestments.com/team/ (last accessed September 8, 2017).

6

22.     Defendant Yaron Zer ("Zer") is an individual who resides at 165 West Girard Avenue in Philadelphia, Pennsylvania.  Defendant Zer is the President and VP of Sales of ABC Capital, ABC Realty and New Philly and is an owner member of the ABC Entities.  *See* http://www.abccapitalinvestments.com/team/ (last accessed September 8, 2017).

23.     Defendant Ariel Taube ("Taube") is an individual who resides at 847 North Lawrence Street in Philadelphia, Pennsylvania.  Upon information and belief, Defendant Taube is an owner member of, or otherwise holds an equity interest in, one or more of the ABC Entities.

24.     Defendant Howard A. Greenberg ("Greenberg") is an individual who resides at 125 August Lane in Lansdale, Pennsylvania.  Defendant Greenberg is a licensed real estate broker and is the broker of record for the ABC Entities. *See* http://www.abccapitalinvestments.com/team/ (last accessed September 8, 2017).

## III.    **JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931(a).

26.     This Court has personal jurisdiction over each Defendant pursuant to 42 Pa. C.S.A. § 5301(a).

27.     Venue in Philadelphia County is proper pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(1) given that, *inter alia*, (1) each Defendant's principal place of business is in Philadelphia County; (2) Defendants regularly conduct business in Philadelphia County; (3) the causes of action arose in Philadelphia County; (4) the transactions, occurrences and real property out of which the causes of action arose took

place in Philadelphia County; and (5) performances under the parties' contracts were to occur within Philadelphia County.

## IV.     **FACTUAL ALLEGATIONS**

### A.     **The Parties' Business Relationships**

28.     The principals of Plaintiffs, non-parties David Gabbay and Franco Pacelli, first met Defendants in Spring 2016.

29.     At that time, Defendant Walsh explained that ABC Capital was in the business of managing, rehabilitating and reselling residential properties. He stated that ABC Capital provided property management service through its affiliate ABC Realty and provided rehabilitation and reconstruction services through its affiliate New Philly.

30.     Siena, which owns, rehabilitates and leases residential properties throughout the country, decided to expand its business to the greater Philadelphia area.

31.     In Summer 2016, Siena agreed to engage ABC Realty to manage residential properties that Siena owned in the Philadelphia area.

32.     In or around August 2016, Siena and ABC Realty formalized their relationship by entering into a Property Management Agreement ("PMA"), a copy of which is attached as Exhibit A. The principals of Siena executed the PMA and returned it to ABC Realty for signature. After reasonable investigation, Siena is unaware of whether ABC Realty signed the PMA but, immediately thereafter, both parties began performing under the PMA.

33.     Under the terms of the PMA, ABC Realty agreed to act as property manager for residential properties owned by Plaintiffs. PMA at 1. Specifically, ABC Realty agreed "to

manage, operate, control, lease and to perform certain services and manage the interest of the business, on behalf of [Plaintiffs]." *Id.*

34.     Among other responsibilities, ABC Capital Realty agreed to: advertise for, screen and select tenants of suitable creditworthiness; set rental rates that reflect the market conditions of the time; rent and lease the properties; collect and hold all tenant security deposits; collect and hold all rents as they become due; and remit all net funds it collected to Plaintiffs by the 25th of each calendar month, along with an accounting of all funds received and expended. *Id.* at 1-2.

35.     Throughout 2016, Siena and the Related LLCs acquired up to 25 residential properties in the greater Philadelphia area.  Plaintiffs acquired such homes independently and through separate sales transactions with ABC Capital.

36.     Between August 2016 and May 2017, ABC Capital Realty managed, pursuant to the terms of the PMA, approximately 20 separate residential properties owned by Plaintiffs.

37.     During this same period, Plaintiffs hired New Philly to perform rehabilitation and reconstruction work on the homes they acquired.  To streamline budgeting and avoid the need to haggle over each project, Plaintiffs and New Philly negotiated and agreed to a "rate card" that established the fees that New Philly would charge for various rehabilitation and reconstruction work for the homes Plaintiff acquired.

38.     Between August 2016 and May 2017, New Philly agreed to rehabilitate and refurbish approximately 25 residential properties owned by Plaintiffs.

Case ID: 170900577

39.     For each such property, Plaintiffs and New Philly applied the agreed-upon "rate card" to determine the amounts to which New Philly was allegedly entitled to be paid for its services.

40.     Throughout the fall 2016, New Philly requested monetary draws from Plaintiffs for rehabilitation work supposedly completed in various residential properties. Notwithstanding that the rehabilitation work was perpetually behind schedule, Plaintiffs agreed to nearly all of New Philly's draw requests; however, Plaintiffs began to express increasing concern over the construction quality and backlog, which necessarily delayed the ability of the homes to be leased to tenants.

41.     New Philly often took six to seven months to complete rehabilitation and reconstruction activities in a single residential property, which unnecessarily and unreasonably tied up Plaintiffs' capital in non-revenue-producing activities.

42.     As a result of these construction issues, in November 2016, Plaintiffs stopped contracting with New Philly to provide rehabilitation services for properties Plaintiffs acquired from that point forward; Plaintiffs, however, continued to allow New Philly to perform services on the pre-existing properties and continued using ABC Realty to manage all properties.

43.     In March 2017, the principals of Plaintiffs met with Defendants Vana and Walsh and others to discuss Plaintiffs' dissatisfaction with New Philly's rehabilitation services, among other topics. During that meeting, Plaintiffs again expressed the desire to perform their own construction services on all future residential properties. Defendants nonetheless expressed interest in retaining the property management business.

Case ID: 170900577

44.     The parties agreed to continue their property management relationship for the time being but Plaintiffs continued to express concern over New Philly's inability to promptly and efficiently rehabilitate the preexisting residential properties.

**B.     The Termination of the Parties' Relationships**

45.     On May 18, 2017, Plaintiffs' principals again met with Defendant Walsh. Plaintiffs complained about defective and deficient work that New Philly had performed on a residential property located at 1525 Overington Street.  Specifically, the floors in that home were uneven and unsafe.  In addition, New Philly had begun its rehabilitation work in that home more than six months prior but still had not completed its work.

46.     At the May 18 meeting, the parties jointly agreed to terminate all of their contractual relationships as of May 31, 2017.

47.     Defendant Walsh informed his office manager, Peter Brooks, that the parties' relationship was ending as of May 31 in the presence of Plaintiffs' two principals and Tony Stasiak, New Philly's Head of Construction Managers.

48.     Defendant Walsh also offered to refer Plaintiffs to a new property management company but Plaintiffs stated that they already had a company in mind.

49.     On May 31, 2017, Plaintiffs introduced their new property manager to Mr. Brooks, who provided the new property management company with contact information for the tenants in Plaintiffs' residential properties.

50.     On or around that date, Mr. Brooks also prepared final landlord reports purportedly accounting for all collected rental funds and security deposits that ABC Realty held for the benefit of Plaintiffs.

Case ID: 170900577

51.     Prior to the agreed-upon termination date of May 31, 2017, Plaintiff had paid ABC Realty nearly $11,000 in property management fees.

### C.     Defendants' Unlawful Post-Termination Activities

52.     Despite the express terms of the PMA and the requirements of Pennsylvania law, ABC Realty has since refused to remit to Plaintiffs any of the security deposits and collected rent payments that it continues to hold for, and on behalf of, Plaintiffs.

53.     Exclusive of penalties and interest, to date ABC Realty is holding more than $68,000 of Plaintiffs' funds (in rent and security deposits) and has unlawfully and unjustifiably refused to return such monies to Plaintiffs.

54.     Instead, in a frivolous and largely nonsensical email sent on June 6, 2017, Defendants threatened to file a lawsuit against Plaintiffs for civil conversion, tortious interference, violations of "the Pennsylvania Proprietary Trade Secrets Act," civil conspiracy, and "inducement/breach of fiduciary duty," all arising from Plaintiffs' alleged hiring of certain contractors and subcontractors who allegedly had previously worked for New Philly.  *See* Email of June 6, 2017 ("June 6 Email"), attached as Exhibit B.

55.     In the June 6 Email, Defendants claimed that "[t]he damages you have caused are extreme, proveable [*sic*], and far outweigh anything owed or claims owed." *Id.*

56.     In the June 6 Email, Defendants purported to "set[]-off anything owed" to Plaintiffs. *Id.*

57.     Notwithstanding Defendants' meritless and nonsensical assertions, Plaintiffs had not engaged in any unlawful conduct by hiring a limited number of independent contractors who formerly worked as independent contractors for New Philly.

Case ID: 170900577

58.     Upon information and belief, none of the independent contractors whom Plaintiffs hired were working for Defendants at the time of hire.

59.     Regardless, to the best of Plaintiffs' knowledge, information and belief, none of the independent contractors that Plaintiffs hired possessed any of Defendants' legally protectable trade secret information or was subject to a valid and legally enforceable non-compete obligation or other restrictive covenant.

60.     Instead, by threatening to file a meritless and frivolous lawsuit against Plaintiffs, Defendants were apparently hoping to force Plaintiffs to abandon their claims and allow Defendants to retain the funds that they unlawfully continued to withhold from Plaintiffs. *See id.* ("We are setting-off anything owed, and stand ready to litigate. You can file a Counter-claim, and we can each spend a few hundred thousand dollars litigating, going through depositions, trial or otherwise.").

61.     Plaintiffs have no intention of abandoning their numerous meritorious legal claims against Defendants and stand prepared to litigate this dispute through trial and any subsequent appeal.

**D.     New Philly's Defective Rehabilitation and Construction Services**

62.     Prior to terminating the parties' agreement, Plaintiffs had paid New Philly approximately $750,000 in fees for rehabilitation and reconstruction services.

63.     Following termination of the parties' relationship effective May 31, 2017, Plaintiffs conducted inspections of the residential properties for which New Philly had previously purportedly provided rehabilitation and construction services.

64.     Through such inspections, Plaintiffs found that New Philly – in contrast to its prior representations to Plaintiff of expertise with residential rehabilitation services and

Case ID: 170900577

with its public advertising as "the leader in single family and multifamily renovations in Philadelphia" – performed deficient, unworkmanlike and unacceptable reconstruction services in numerous properties. In addition to the unsafe and uneven flooring issues previously identified in the home at 1525 Overington Street, Plaintiffs found that many of the homes on which New Philly had worked were either missing HVAC units or had HVAC units had not been installed and connected, contrary to New Philly's prior representations. Plaintiffs also found that some homes did not have electric or water meters and that other work supposedly completed had not been performed at all.

65.     Plaintiffs subsequently retained an independent property inspection firm to inspect each of the residential properties for which New Philly had previously purportedly provided rehabilitation and construction services.

66.     Based upon the finding of such reports, Plaintiff will be required to spend nearly $400,000 – in addition to the $750,000 they already paid New Philly – to remediate New Philly's unworkmanlike and incomplete work on the homes.

67.     In addition to causing Plaintiffs to incur substantial financial losses, ABC Realty's failures to properly manage the properties and New Philly's incomplete and defective work created numerous issues and problems for tenants in Plaintiffs' homes.

68.     Many tenants in Plaintiffs' homes lacked basic utilities – such as running water and electricity – for multiple days as a result of Defendants' unlawful actions. For instance, Lynn Young, a tenant in the home located at 124 N. Wanamaker Street in Philadelphia, was without running water for four days in April 2017 as a result of ABC Realty's failures to properly manage the property and New Philly's faulty maintenance and

Case ID: 170900577

rehabilitation work. *See* Affidavit of Lynn Young ("Young Affidavit"), attached hereto as Exhibit C.

69.     Similarly, Taqiyya Orr, a tenant in the home located at 943 E. Stafford Street in Philadelphia, was without electricity for four days in June 2017 as a result of ABC Realty's failures to properly manage the property and New Philly's faulty maintenance and rehabilitation work. *See* Letter of Taqiyya Orr ("Orr Letter"), attached as Exhibit D.

70.     Rodney Chambers, Jr., a tenant in the home located at 3949 N. Franklin Street in Philadelphia, had no heating or cooling for a period of time and his home suffered serious water damage and foundation defects that resulted in an infestation of mosquitoes as a result of ABC Realty's and New Philly's failures.  Mr. Chambers rated his experience with the ABC Entities a "0 of out 10." *See* Email of Rodney Chambers, Jr., attached as Exhibit E.

71.     As yet another example, Briana Young, a tenant in the home locate at 6069 Regent Street in Philadelphia, had no electricity for several weeks, had faulty plumbing, and was without central air for several months as a result of New Philly's faulty rehabilitation work. *See* Email of Briana Young, attached as Exhibit F.

72.     New Philly's unlawful actions have caused Plaintiffs to incur substantial additional costs to remediate the reconstruction deficiencies, estimated to be nearly $400,000, and have resulted in the loss of tenants.

**E.     Defendants' Fraudulent Efforts to Extract Money from Plaintiffs**

73.     In addition to the unlawful conduct detailed above, all Defendants conspired to, and in fact engaged in, a fraudulent course of conduct in an unlawful effort to extract additional funds from Plaintiffs.

15

74.     Shortly after Plaintiffs expressed concerns about New Philly's work in March

2017, Defendants began making false and outrageous claims of numerous thefts that

allegedly occurred at residential properties New Philly was rehabbing.

75.     For instance, in an email dated April 24, 2017, Defendants claimed the

kitchen, HVAC system and hot water heater at the home located at 2512 South 66th Street

in Philadelphia had all been stolen three separate times, allegedly resulting in losses of

nearly $28,000. *See* April 24, 2017 Email, attached as Exhibit G.

76.     As another example, Defendants attempted to lease Plaintiffs' homes to

tenants without authorization following the May 31 termination date.  For instance, ABC

Realty and Defendant Greenberg purported to lease the home located at 943 E. Stafford

Street in Philadelphia to Taqiyya Orr on June 8, 2017.  In order to provide the tenant with

access to the property, ABC Realty or its agent broke into the home and had a locksmith

change the locks (since Plaintiffs had changed the locks on the homes following the May 31

termination). *See* Orr Letter (Ex. D).

77.     As yet another example, Defendants charged Plaintiffs' tenants more than the

lease terms required and repeatedly attempted to collect rent from them well after the

parties had terminated their relationships effective May 31, 2017.  For instance, during the

period of time it was authorized to manage the property at 124 N. Wanamaker Street in

Philadelphia, ABC Realty charged the tenant, Lynn Young, $950 per month in rent, even

though Ms. Young's written lease only required her to pay $900 monthly. *See* Young

Affidavit (Ex. C) ¶ 7.

78.     After May 31, 2017, ABC Realty, acting without authority, repeatedly

contacted Ms. Young and demanded that she pay her monthly rent to them, even though

Case ID: 170900577

she was already paying rent to the current property management company. *See* Young Affidavit (Ex. C) ¶ 10.

79.     On July 30, 2017, nearly two full months after Plaintiffs terminated ABC Realty's management authority, a representative of ABC Realty personally came to Ms. Young's home and demanded that she immediately pay the monthly rent or she would be removed from the home. Ms. Young, who is disabled, felt shaken and scared by the encounter. *See* Young Affidavit (Ex. C) ¶¶ 11-12.

80.     Unfortunately, Ms. Young was not the only tenant from which ABC Realty unlawfully attempted to extract rent long after the parties' May 31 termination date. ABC Realty repeatedly contacted Briana Young in June and July 2017, demanding that she pay it rent, even though Ms. Young was already making monthly rental payments to Plaintiffs' new property management company. *See* Young Lease Statement, attached as Exhibit H.

81.     As yet another example of Defendants' unlawful efforts to extract money from Plaintiffs, Defendant repeatedly lied to Plaintiffs about L&I's alleged approvals of properties and demanded payment for work that they claimed had been completed in the homes but, in fact, had not.

82.     For instance, in late 2016 Plaintiffs hired New Philly to perform "make safe" structural repair work on the home at 618 East Stafford Street in Philadelphia. Prior to retaining New Philly, Plaintiffs had obtained a structural engineering report from Cooper Consulting, LLC ("Cooper") specifically outlining all of the rehabilitation procedures that were required to make the home structurally sound. New Philly agreed to perform all such work.

Case ID: 170900577

83.     In Spring 2017, Defendants Vana and Walsh specifically told Plaintiffs that all necessary repair work had been completed at 618 East Stafford and that L&I had approved the structural repair work.  Based on Defendants' material representations, Plaintiffs paid New Philly $35,000 for its rehabilitation services and obtained several building permits to allow them to perform electrical and other rehabilitation work in the home themselves.

84.     After the parties terminated their relationship, Plaintiffs discovered that Defendants Vana and Walsh had lied to them.  Not only had New Philly failed to complete the necessary repair work at 618 East Stafford but L& I had not, in fact, approved the home. On July 14, 2017, Cooper re-inspected the home and identified 18 separate items that needed to be completed or corrected for the home to be considered structurally sound – work that Defendants had falsely claimed New Philly had previously completed.

85.     In addition, because L&I had not approved the home (contrary to Defendants' representations), all of the additional electrical and other rehabilitation work that Plaintiffs had completed in the home in the interim was required to be torn out and new permits would need to be obtained after L&I gave its approval.  So, in connection with this single property, Plaintiffs (a) paid for work that was not completed by New Philly; (b) paid for the issuance of building permits that should not have been issued; (c) incurred substantial costs performing electrical and other rehabilitation work that was later required to be torn out; (d) retained a new contractor to perform the structural work that New Philly was supposed to have completed; and (e) were required to again obtain the same building permits and again perform the same electrical and other rehabilitation work that it had previously completed.

86.     Unfortunately, Defendants' material misrepresentations to Plaintiffs about phantom L&I approvals were not limited to the property at 618 East Stafford. Defendants Vana and Walsh also falsely told Plaintiffs that L&I had approved the properties at 6613 Gerry Street and 6615 Gerry Street – units that are now occupied. In fact, however, both properties failed L&I's electrical inspection, based on faulty work that New Philly had been paid to perform. Plaintiffs' current property management company is currently working to remedy the deficiencies in Defendants' work.

87.     Finally, as yet another unlawful effort to extract money from Plaintiffs, on or about August 14, 2017, Defendant ABC Capital filed a frivolous federal lawsuit in the United States District Court for the Eastern District of Pennsylvania against Siena, certain of the Related LLCs, and non-parties David Gabbay and Franco Pacelli, alleging the same baseless claims that were described in their June 6 E-Mail (*see* Ex. B). *See* Federal Complaint, attached hereto as Exhibit I.

88.     In addition to asserting numerous legal claims that are baseless and fail as a matter of law, ABC Capital purported to invoke the federal court's diversity jurisdiction, despite that fact that no diversity of citizenship in fact exists between the parties. As a result of obvious deficiencies in ABC Capital's filing, Plaintiffs herein (along with non-parties Gabbay and Pacelli) have moved to dismiss the Federal Complaint for lack of subject matter jurisdiction, which remains pending.

## V.     CLAIMS FOR RELIEF

### COUNT ONE – BREACH OF CONTRACT
### (AGAINST ABC REALTY)

89.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

Case ID: 170900577

90.     In or around August 2016, Siena and ABC Realty entered into a Property Management Agreement ("PMA"), a copy of which is attached as Exhibit A.

91.     ABC Realty initially prepared the PMA.

92.     Plaintiffs and ABC Realty accepted the PMA either by formally executing the PMA, by performing thereunder, or both.

93.     Siena and ABC Realty orally agreed to extend the terms of the PMA to cover addition residential properties owned by the Related LLCs rather than Siena.

94.     Under the terms of the PMA, ABC Realty is required to remit all net funds it collected from residential tenants (including rent payments and security deposits) to Plaintiffs by the 25th of each calendar month, along with an accounting of all funds received and expended.

95.     Despite the parties jointly terminating their relationship as of May 31, 2017, ABC Realty has breached the PMA by unjustifiably and unlawfully refusing to remit to Plaintiffs any of the funds that it collected, and continues to hold, on Plaintiffs' behalf.

96.     ABC Realty's breach actually and proximately caused Plaintiffs to suffer financial damages in excess of $68,000, exclusive of costs, penalties and interest.

### COUNT TWO – BREACH OF FIDUCIARY DUTY
### (AGAINST ABC REALTY)

97.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

98.     ABC Realty agreed to act as property manager for residential properties owed by Plaintiffs.

99.     In its role as property manager, ABC Realty agreed to act as Plaintiffs' lawful agent and attorney-in-fact to manage the interest of the business on behalf of Plaintiffs.

Case ID: 170900577

100.    In its role as property manager, ABC Realty had exclusive access to, and control over, funds that legally and equitably belong to Plaintiffs.

101.    Plaintiffs surrendered all control to ABC Realty over establishing, collecting, holding and managing funds (including rent payments and security deposits) generated by Plaintiffs' residential properties.

102.    Plaintiffs reasonably and justifiably expected ABC Realty to conduct itself honestly, reasonably, and in good faith at all times.

103.    As a result of ABC Realty's unilateral and exclusive control over all aspects of managing and leasing Plaintiffs' residential properties, ABC Capital Realty had a special relationship of trust with Plaintiffs and owed a fiduciary duty to Plaintiff and the Class.

104.    Under Pennsylvania law, "[a]n agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." *Sutliff v. Sutliff*, 515 Pa. 393, 404 (1987) (citing RESTATEMENT (SECOND) OF AGENCY (1958) ("An agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.")).

105.    Under Pennsylvania law, the fiduciary obligation an agent owes the principal includes a duty of disclosure. The agent must disclose to the principal all relevant information pertaining to the parties' performances within the scope of the agency relationship. *See, e.g., Matter of Estate of Evasew*, 526 Pa. 98, 104 (1990) ("[A] fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he communicated to the other, not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge the value of his property.").

21

106.   ABC Realty breached the fiduciary duties it owed to Plaintiffs by, among other things, refusing to remit (and unjustifiably continuing to withhold) rent payments and security deposits it had collected and held on behalf of Plaintiffs, failing to disclose to Plaintiffs the numerous ways in which its affiliates and other Defendants were knowingly and unlawfully extracting money from Plaintiffs by demanding and receiving payment for rehabilitation and reconstruction work that they falsely claimed had been completed, and by conspiring with other Defendants and actually engaging in a course of conduct designed to extract additional funds from Plaintiffs by falsely making claims of thefts, attempting to lease Plaintiffs' properties without authorization, attempting to collect rent payments from tenants in Plaintiffs' properties after Plaintiffs had terminated the PMA, and the other unlawful activities described herein.

107.   ABC Realty's numerous breaches of fiduciary duty actually and proximately caused Plaintiffs to suffer substantial financial injuries in an amount to be proven at trial but, in any event, far in excess of $68,000.

### COUNT THREE – CONVERSION
### (AGAINST ABC REALTY)

108.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

109.   Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451 (1964).

110.   Under Pennsylvania law, the tort of conversion does not rest on proof of specific intent to commit a wrong; instead, intentional control over another's property is

sufficient. *Norriton East Realty Corp. v. Central-Penn National Bank*, 435 Pa. 57, 60-61 (1969).

111.    Under Pennsylvania law, "[m]oney may be the subject of conversion." *Shonberger v. Oswell*, 365 Pa. Super. 481, 485 (1987).

112.    By unlawfully and unjustifiably refusing to remit to Plaintiffs the rental payments, security deposits and other funds it collected and still holds for the benefit of Plaintiffs, ABC Realty has committed the intentional tort of conversion.

113.    ABC Capital Realty's tortious conduct actually and proximately caused Plaintiffs to suffer substantial financial injuries in an amount to be proven at trial but, in any event, far in excess of $68,000.

### COUNT FOUR – BREACH OF CONTRACT
### (AGAINST NEW PHILLY)

114.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

115.    Plaintiffs and New Philly entered into a series of agreements pursuant to which New Philly agreed to perform certain rehabilitation and reconstruction services on residential properties owned by Plaintiffs.

116.    Between August 2016 and May 2017, New Philly agreed to rehabilitate and refurbish approximately 25 residential properties owned by Plaintiffs.

117.    New Philly breached its contracts with Plaintiffs by, among other things, failing to timely complete the contracted-for rehabilitation and reconstruction services.

118.    New Philly breached its contracts with Plaintiffs by, among other things, performing its rehabilitation and reconstruction services in a deficient, defective, unworkman-like and unacceptable manner.

Case ID: 170900577

119.    New further breached its contract with Plaintiffs by, among other things, demanding and receiving payment from Plaintiffs for work that New Philly and other Defendants falsely claimed had been completed satisfactorily when, in fact, such work either was not done at all or was not done in a workmanlike manner.

120.    Plaintiffs have lost tenants as a result of New Philly's breaches of contract.

121.    Plaintiffs have suffered financial losses as a result of New Philly's breaches of contract, including having paid for work that would not satisfactorily completed, being required to expend substantial funds to rectify and remediate the defective work performed by New Philly, and the loss of past, current and future rental income.

122.    New Philly's numerous breaches of contract actually and proximately caused Plaintiffs to suffer substantial financial injuries in an amount to be proven at trial but, in any event, in excess of $395,000, exclusive of interest, penalties and costs.

## COUNT FIVE – TORTIOUS INTERFERENCE WITH CONTRACT
## (AGAINST ABC REALTY)

123.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

124.    Plaintiffs have existing contractual relationships with the tenants who lease the homes Plaintiffs own.

125.    ABC Realty, intentionally and without justification or authority, interfered with Plaintiffs' relationships with its tenants by repeatedly contacting, harassing and intimidating the tenants in Plaintiffs' homes by demanding payment of monthly rent after the parties had terminated their relationship effective May 31, 2017.

126.   ABC Realty had no authority to demand payment on Plaintiffs' behalf after May 31, 2017, and it engaged in such conduct with the specific intention of extracting money from tenants and interfering with the tenants' existing relationship with Plaintiffs.

127.   ABC Realty's unlawful actions actually and proximately caused Plaintiffs to suffer substantial financial injuries in an amount to be proven at trial.

## COUNT SIX – NEGLIGENT MISREPRESENTATION
## (AGAINST NEW PHILLY)

128.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

129.   New Philly represented and warranted to Plaintiffs that it had the expertise, capacity, ability and interest to perform its rehabilitation and reconstruction services in a competent, workmanlike and commercially acceptable manner.

130.   New Philly advertises itself as "the leader in single family and multifamily renovations in Philadelphia." *See* http://newphillyconstruction.abccapitalinvestments.com (last accessed September 8, 2017).

131.   New Philly either knew or should have known that its statements to Plaintiffs concerning its alleged expertise, capacity, ability and interest were not truthful at the time they were made.

132.   New Philly intended to induce Plaintiffs to rely on its misrepresentations and Plaintiffs, in fact, did so reasonably and justifiably rely.

133.   New Philly's unlawful conduct actually and proximately caused Plaintiffs to suffer substantial financial injuries in an amount to be proven at trial.

Case ID: 170900577

## COUNT SEVEN – FRAUD
## (AGAINST ALL DEFENDANTS)

134.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

135.    In the course of the parties' dealings, all Defendants engaged in a pattern of fraudulent and unlawful behavior designed to extract money from Plaintiffs.

136.    For instance, throughout the parties' relationship, New Philly and its agents repeatedly represented to Plaintiffs that certain rehabilitation and reconstruction work had been satisfactorily completed when, in fact, such work had not been done.

137.    Beginning in Spring 2017, Defendants knowingly and falsely represented to Plaintiffs that various equipment and supplies had been stolen from certain residential properties in which New Philly was working.

138.    Despite agreeing to jointly terminate the PMA on May 31, 2017, Defendants attempted after May 31 to lease Plaintiffs' residential properties without authorization (through leases on which Mr. Greenberg was identified as the broker of record).

139.    After May 31, 2017, Defendants and their agents repeatedly attempted to collect rent payments from tenants in Plaintiffs' residential properties, even though they had no right or authority to do so.

140.    Defendants repeatedly and falsely represented to Plaintiffs that L&I had approved the rehabilitation work and that the units were ready for occupancy.

141.    Defendants intentionally made all such representations in connection with the above-referenced activities knowing the statements to be false.

142.    By intentionally making such false representations, Defendants intended to induce Plaintiffs to act.

Case ID: 170900577

143.    In reasonable and justifiable reliance on Defendants' intentionally false and misleading statements, Plaintiffs suffered suffer substantial financial injuries in an amount to be proven at trial.

### COUNT EIGHT – CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

144.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

145.    Defendants improperly, intentionally and unlawfully conspired between and among themselves to commit unlawful acts on Plaintiffs by, among other things, breaching contractual and fiduciary duties owed to Plaintiffs by unlawfully and unjustifiably refusing to return funds held for the benefit of Plaintiffs, making false claims for payment for rehabilitation and reconstruction work that was not completed, attempting to lease Plaintiffs' residential properties without authorization, attempting to collect rent payments from tenants in Plaintiffs' residential properties without authorization, making false claims of theft, affirmatively mispresenting that L&I had approved units for occupancy, and the other unlawful activities discussed above.

146.    Numerous overt acts took place in furtherance of the conspiracy, such as making false claims for payment to Plaintiffs, making false theft claims to Plaintiffs, and attempting to lease Plaintiffs' properties or collect rent payments after the PMA was terminated.

147.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs suffered suffer substantial financial injuries in an amount to be proven at trial.

Case ID: 170900577

## COUNT NINE – DECLARATORY RELIEF
## (AGAINST ALL DEFENDANTS)

148.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

149.    In a frivolous and largely nonsensical email sent on June 6, 2017, Defendant Walsh threatened to file a lawsuit on behalf of ABC Capital, ABC Capital Realty and New Philly against Plaintiffs for civil conversion, tortious interference, violations of "the Pennsylvania Proprietary Trade Secrets Act," civil conspiracy, and "inducement/breach of fiduciary duty," all arising from Plaintiffs' alleged hiring of certain contractors who allegedly formerly worked for New Philly. *See* June 6 Email (Ex. B).

150.    On or about August 7, 2017, ABC Capital filed a lawsuit against Siena, certain of the Related LLCs, and Messrs. Gabbay and Pacelli asserting the same meritless and frivolous claims asserted in the June 6 E-Mail. *See* Federal Complaint (Ex. I).

151.    Contrary to ABC Capital's unsupported allegations, there is no "complete diversity of citizenship" between the parties and, therefore, no basis for the exercise of federal jurisdiction.

152.    For federal diversity jurisdiction, "the citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

153.    Franco Pacelli, a member of Siena, and Amir Vana, a member of ABC Capital, ABC Capital Realty, New Philly, are both New Jersey residents.

154.    Accordingly, Plaintiffs filed a motion to dismiss the Federal Complaint for lack of subject-matter jurisdiction, which remains pending.

Case ID: 170900577

155.   Nonetheless, because Defendants have repeatedly threatened to file a lawsuit against Plaintiffs over the hiring of certain individuals who allegedly formerly worked for New Philly, and in fact ABC Capital has already attempted to do so, an actual controversy of exists and Plaintiffs have a direct, substantial and present interest in a judicial declaration, pursuant to 42 Pa. C.S.A. § 7532, that fully and finally resolves this dispute.

156.   Plaintiffs have not engaged in any unlawful conduct by hiring a limited number of contractors who formerly worked as independent contractors for New Philly.

157.   Upon information and belief, none of the individuals whom Plaintiffs hired as independent contractors were working for Defendants as independent contractors at the time of hire.

158.   Regardless, to the best of Plaintiffs' knowledge, information and belief, none of the independent contractors that Plaintiffs hired possessed any of Defendants' legally protectable trade secret information or was subject to a valid and legally enforceable non-compete obligation or other restrictive covenant.

159.   In the absence of a declaration that Plaintiffs did not violate any legal obligation by hiring certain independent contractors who formerly worked as independent contractors for New Philly, Defendants presumably will continue to accuse Plaintiffs of acting unlawfully and Plaintiffs will be forced to pursue additional relief in the future.

160.   Plaintiffs are entitled to a declaration from the Court that they acted lawfully and properly by hiring the disputed individuals.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

Case ID: 170900577

A.   Enter judgment in favor of Plaintiffs and against ABC Realty on the claim for breaches of contract;

B.   Enter judgment in favor of Plaintiffs and against ABC Realty on the claim for breaches of fiduciary duty;

C.   Enter judgment in favor of Plaintiffs and against ABC Realty on the claim for conversion;

D.   Enter judgment in favor of Plaintiffs and against ABC Realty on the claim for tortious interference with contract;

E.   Enter judgment in favor of Plaintiffs and against New Philly on the claim for breaches of contract;

F.   Enter judgment in favor of Plaintiffs and against New Philly on the claim for negligent misrepresentation;

G.   Enter judgment in favor of Plaintiffs and against each Defendant on the claims for fraud and civil conspiracy;

H.   Enter a declaration that Plaintiffs did not violate the Pennsylvania Trade Secret Act, engage in a civil conspiracy, tortiously interfere with existing or prospective contractual relations, breach any fiduciary duty, engage in "civil conversion," or otherwise act unlawfully by hiring certain individuals as independent contractors who formerly were independent contractors of New Philly;

I.   Issue an injunction enjoining ABC Realty and all other Defendants from making any efforts to collect rent, security deposits, or any other funds from tenants in Plaintiffs' homes;

Case ID: 170900577

J.      Issue an injunction enjoining ABC Realty and all other Defendants from harassing, intimidating or otherwise having any contact with the tenants in Plaintiffs' homes;

K.      Award Plaintiffs all actual, equitable, and compensatory damages as allowed by law in an amount to be determined at trial;

L.      Order ABC Realty to immediately remit all rental payment, security deposits and other funds that ABC Realty collected and is holding for the benefit of Plaintiffs, which exceeds $68,000, excluding penalties, interest and costs;

M.      Order ABC Realty to disgorge all management fees that Plaintiffs paid it prior to termination of the PMA, which total approximately $11,000, excluding penalties, interest and costs;

N.      Order New Philly to pay all costs and expenses required to complete and to remediate and rectify the defective work it performed on Plaintiffs' residential properties, which total nearly $400,000, excluding penalties, interest and costs;

O.      Order New Philly to disgorge all fees that Plaintiffs paid it for rehabilitation and reconstruction services, which total approximately $750,000, excluding penalties, interest and costs;

P.      Award Plaintiffs further declaratory and injunctive relief, as appropriate;

Q.      Award Plaintiffs their costs of suit, including reasonable attorneys' fees, as allowed by law;

R.      Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law; and

Case ID: 170900577

S.      Award Plaintiffs such further and additional relief as the Court may deem just

and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable

LeVAN LAW GROUP LLC

DATED: September 8, 2017          By:   */s/ Peter H. LeVan, Jr.*
                                          Peter H. LeVan, Jr. (Atty ID No. 83456)
                                          One Logan Square – 27th Floor
                                          Philadelphia, PA 19103
                                          215.561.1500
                                          215.827.5390 (facsimile)
                                          plevan@levanlawgroup.com

                                          *Attorneys for Plaintiffs*

Case ID: 170900577



# EXHIBIT A

Case ID: 170900577

# PROPERTY MANAGEMENT AGREEMENT

This Agreement is made and entered into this 22 day of August 2016 by and between **ABC CAPITAL REALTY, LLC,** with its principal place of business at: **1218 N. Marshall Street Philadelphia, PA 19122** (the "Manager"), and **SIENA VENTURES, LLC,** with its principal place of business at: **576 Valley Road, #311, Totowa, NJ 07470** (the "Owner") including its principals, partners, affiliates, members.

The Owner operates a real estate business of owning, rehabilitating and renting residential real property.

Whereas, the Owner wishes to retain the Manager in its capacity as an independent contractor, and the Manager wishes to be retained in such capacity, to manage, operate, control, lease, and to perform certain services and manage the interest of the business, of behalf of Owner.

Therefore, the parties hereto agree as follows:

Manager's principal duties shall include the management, and maintenance, of the Owner's real property holdings located at:

Following described properties: (the Property")

Any additional property under management shall be described on a separate attachment known as Exhibit B and shall be continually updated as additional property is acquired by Owner and shall be part of this management agreement hereto.

**Duties and Responsibilities of Manager.** Owner hereby appoints Manager as his lawful agent and attorney-in-fact with full authority to do any and all lawful things necessary for the fulfillment of this Agreement, including the following:

   A. *Collection and Disbursement.* Manager agrees to collect all rents as they become due from tenants, pay all bills it reasonably deems necessary and appropriate including real estate taxes and assessments, mortgage obligations, insurance obligations, repairs and maintenance fees, and the management fees provided under this agreement, and take any other action with respect to management and operation of the  property/ properties of the Owner as it deems necessary or proper, and remit any net funds collected by manager to Owner by the 25TH of the month, and remit accounting of rents received and expenses paid, provided, however, that the rent has been received from the tenant.

1

Manager shall account to Owner, all out of pocket expenses and Owner shall reimburse amounts not less frequently than once a month.

B. *Maintenance and Labor.* Manager agrees to maintain, and to repair Owner's property / properties and to hire and to supervise all employees and other needed labor. Manager does not need prior approval from Owner, unless the cost to repair shall exceed $300, for any single repair to any single property in which Manager shall get verbal or written or electronic notice from Owner to do so.

If Owner does not allow Manager to proceed with repairs/replacement that exceed cost above, then Owner shall be fully liable for any consequential damage that may occur to property, tenant, or general public and shall hold Manager harmless.

In the event that an emergency repair or replacement is required to maintain the integrity of the structure or basic operation of Owner's Property, the Manager has the right to repair or replace as necessary without prior cost approval of the Owner, even if costs exceed amount specified above.

Manager defines an emergency repair where <u>time is of the essence to mitigate (minimize) damages</u> to property of the Owner which can take place during normal working hours (8am-6pm) Monday through Friday or abnormal working hours including late nights after 6pm-8am and weekends.

Cost of Repairs and/or Replacements shall be reimbursed to Manager by deduction from rents.

C. *Advertisement and Legal Proceedings.* Manager agrees to advertise for tenants, screen tenants and select tenants of suitable credit worthiness. Manager will set rents that in the opinion of the Manager at the time of the rent negotiations with the tenant, reflect the market conditions of that time and approximate rents of comparable rental properties, unless expressly instructed in writing by the Owner to the Manager to the contrary, as to the amount of the initial rent and any subsequent increases as may from time to time be appropriate. Manager agrees to rent and to lease the property; to sign, renew and to cancel rental agreements and leases for the property or any part thereof; to sue, with Owner consent, and recover for rent and for loss or damage to any part of the property and/or furnishings thereof; and, when expedient, to compromise, settle and release any such legal proceedings or lawsuits, and costs shall deduct from rents.

2

D. *Best Efforts without Limitation.* The Manager shall devote its best efforts, at the time and places it reasonably deems appropriate to its duties hereunder. However, it is expressly agreed that Manager may serve as a consultant, manager, developer, investor, or employee to other persons or entities without limitation.

E. *Secure Insurances.* The Owner shall be responsible to secure, at the Owners expense, all necessary insurance coverage for the property/properties of Owner that is under this management agreement by Manager.

F. *Obtain Licenses & Permits & Certifications:* The Manager shall be responsible to obtain any permits, licenses, certifications, and pay and deduct from rents.

**Liability of Manager.** Owner hereby agrees to hold Manager harmless from, and to defend Manager against, any and all claims, charges, debts, demands and lawsuits. The Owner agrees to pay Manager's attorney's fees related to Manager's management of the herein-described property and any liability for injury on or about the property which may be suffered by any employee, tenant or guest upon the property. The Manager shall procure property management insurance policy on behalf of the Owner who agrees to maintain sufficient and prudent all risks property insurance and that the Manager shall be an additionally named insured.

**Compensation of Manager.** The Owner agrees to compensate the Manager as follows. The Owner agrees to pay the Manager an amount equal to 100 percent (for the first year then 100% after) of the first full month's rent as a fee for acquiring, screening, and renting the premises; and further agrees to pay a percentage of all gross rents collected (see table below for percentage tiers based number of rental units managed), as a fee for managing the property; which fees, plus expenses outlined in this Agreement, may be deducted by the Manager from rents, and further agrees to abide by the conditions set forth, if any by the Manager to the tenant on the Owner's behalf.

| Rental Units Managed | Percent (%) of Gross Rents Collected |
|---|---|
| 1 – 9 | 10% |
| 10 – 24 | 9% |
| 25 – 49 | 8% |
| 50 – 75 | 7% |
| 76+ | 6% |

3

**Term of Agreement.** The term for which Manager shall be retained hereunder shall commence on the date hereof and shall terminate upon the earlier of: (i) the cessation of the Business of the Property Entity; (ii) the bankruptcy or dissolution of the Property Entity (Owner) or The Manager; the last day of the 6th month (6 month term) following the date of this Agreement.

Upon expiration of the above 6 month term, this Agreement shall automatically be renewed and extended for 1 year ongoing year to year, unless terminated in writing by either party by providing written notice 60 days prior to the anniversary date for such renewal.

Upon termination, the Owner shall pay to the Manager any fees, commissions and expenses due Manager under terms of this Agreement, which are owed to Manager.

If Owner or ABC terminates the property management agreement, all warranties provided by ABC and its affiliates are NULL and Void

**Successors and Assigns.** This Agreement shall be binding upon and endure to the benefit of the successors and assigns of the Manager and the heirs, administrators, successors, and assigns of the Owner.

**Assignment.** Manager can assign its interest under this Agreement. In the event of such assignment, Manager shall provide Owner 30 day notice, and Manager shall be released from all liability under this Agreement upon the express assumption of such liability by its assignee. If Manager assigns its interest under the Agreement, then Owner may terminate this Agreement immediately.

**Notices.** All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or mailed, by either registered mail or certified mail return receipt requested, or sent via a national overnight courier, to the parties hereto at the addresses listed herein, or at such other address for a party as shall be specified by notice given pursuant hereto ("Notice").

(The only exception to notices and other communications in this paragraph allowed are specified under Maintenance and Repairs where a faster response time may be necessary.)

**Waiver.** The failure of either the Manager or the Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act which constitutes a violation from having all the force and effect of a violation.

4

**Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto, supersedes all existing agreements between them and cannot be changed or terminated except by a written agreement signed by the parties as described in this agreement.

**Applicable Law.** This Agreement shall be construed in accordance with the substantive law of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the parties hereto hereby execute this Agreement below.

_____        8/22/16
Owner                                   Date

_____        8/22/16
Owner                                   Date


_____        _____
Manager                                 Date

5

# EXHIBIT A

## Net monthly remittances shall be made:

### (   ) Mailed to:

### ( x ) Deposited in:

REDACTED

# EXHIBIT B

### Properties

5239 Westford Street Philadelphia, PA 19120
143 Linton Street Philadelphia, PA 19120
2214 Melvin Street Philadelphia, PA 19131
1006 N 67th Street Philadelphia, PA 19151
5912 W Oxford Street Philadelphia, PA 19151
2524 Bonaffon Street Philadelphia, PA 19142
2527 Hobson Street Philadelphia, PA 19142
6613 Gerry Street Philadelphia, PA 19138
6615 Gerry Street Philadelphia, PA 19138
7115 Theodore Street Philadelphia, PA 19138
943 E Stafford Street Philadelphia, PA 19138
5782 Stewart Street Philadelphia, PA 19131
7349 Garman Street Philadelphia, PA 19153
5221 N American Street Philadelphia, PA 19120
5537 Boyer Street Philadelphia, PA 19138

7

# EXHIBIT B

Case ID: 170900577

--------- Forwarded message ---------
From: **David Shulick** <dshulick@shulicklaw.com>
Date: Mon, Jun 12, 2017 at 6:35 PM
Subject: Re: Cease and Desist Notice
To: Jay Walsh <jay@abccapitalinvestments.com>
Cc: David Gabbay <dagabbay@yahoo.com>, Franco Pacelli <franco.pacelli@gmail.com>, Amir Vana <amirvana71@gmail.com>

Complaint dictated and being filed


David T. Shulick, Esquire
SHULICK LAW
www.shulicklaw.com

SENT FROM MY IPHONE, PLEASE EXCUSE GRAMMAR....VOICE DICTATED BY SIRI

On Jun 6, 2017, at 9:43 AM, Jay Walsh <jay@abccapitalinvestments.com> wrote:

> David and Franco:
>
>
> I have expedited a request for our Attorney to advise regarding how, and when, we can take legal action against you.
>
>
> As you know, you and BTV PHIL LLC, SIENNA VENTURES LLC, SV PA PHIL 1 LLC and any other LLC's that you control, were the Clients of ABC CAPITAL INVESTMENTS, L.L.C., NEW PHILLY CONSTRUCTION, LLC AND ABC CAPITAL REALTY LLC (ABC).  As described below, ABC has learned that you have engaged in several illegal acts, including but not limited to:
>
>
> 1 – Civil Conversion – the deprivation of another's right to use or possess information, staff, intellectual or actual property – often defined as interference of a person's right to property without the owner's consent and without lawful justification. Pennsylvania Supreme Court - Stevenson v. Economy Bank of Ambridge;
>
>
> 2 – Tortious Interference with Existing and Prospective Contractual Relations – Under Pennsylvania law, the requisite elements of a cause of action for interference with prospective contractual relations are as follows: (1) a prospective contractual relationship;(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;(3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. Restatement (Second) of Torts § 766B (1979); *Phillips v. Selig*, 2008 PA Super 244, 959 A.2d 420, 428 (Pa. Super. Ct. 2008). With respect to the first element, the term "prospective contractual relationship," has been regarded by the Pennsylvania Supreme Court as something less than a

Case ID: 170900577

contractual hope, but something more than a mere hope. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 209, 412 A.2d 466, 471 (1979).

3 – Violation of the Pennsylvania Proprietary Trade Secrets Act – COMMERCE AND TRADE (12 PA.C.S.) AND CRIMES AND OFFENSES (18 PA.C.S.) - TRADE SECRETS AND OFFENSE OF THEFT OF TRADE SECRETS Act of Feb. 19, 2004, P.L. 143, No. 14. As you can see, customer lists, employees, INDUCING BREACHES of relationships, now has protection by STATUTE, allowing our company to file an Injunction Action, seek damages, attorneys fees. I would read this quite carefully. You have used your 'client' status to wrongfully and intentionally poach and violate this Act.

4 – Civil Conspiracy and Inducement/Breach of Fiduciary Duty – See the following:

Trial Court Affirms Damage Award of $2.4 Million Plus Punitive Damages To Employer against Employee for a Breach of Duty of Loyalty:

One of the most damaging events for a small business is misconduct by a former or client stealing its customers and valued employees. This issue was addressed in a recent court decision.

On December 10, 2014, in the matter of Balmer Company, Inc., v. Frank Crystal and Company, Inc., the Honorable William P. Mahon of the Court of Common Pleas of Chester County, Pennsylvania, reaffirmed a compensatory award of damages to an employer in the amount of $2.4 million against its former employees for, among other claims, a breach of fiduciary duty of loyalty. In the Balmer case, former employees sought to solicit the Balmer employees, customers, and clients and to conspire with a new company to create a competing insurance agency by disparaging the employer and through stealing its customers. Other former employees also conspired with the Defendants which eventually resulted in a failed attempt to decimate the sales and marketing capabilities of the Plaintiff-Employer by soliciting its employees, customers, and clients and by breaching or interfering with both employment agreements and fiduciary obligations owed by these employees to the Plaintiff-Employer. The Plaintiff-Employer filed suit for claims of breach of contract, breach of duty of loyalty, breach of fiduciary duties such duty of loyalty, unfair competition and civil conspiracy. The Plaintiff-Employer also sought punitive damages. The court awarded $2,391,569 in compensatory damages for lost revenue based upon the Plaintiff-Employer's expert witness. These losses represented lost revenue as a result of the former employee-Defendant's conduct. The court focused on the breach of contract action, breach of fiduciary duty of loyalty, and civil conspiracy claims. The breach of contract claim was based upon contracts that the former Defendant-Employees had signed which were incidents of their employment relationship with the Plaintiff-Employer. There were certain restrictions imposed which were reasonably necessary for the protections of the Plaintiff-Employer. Such agreements must be reasonably limited in duration and geography, and the court found this to be the case in the Balmer case. Where a former employee breaches such an agreement, the Plaintiff-Employer may seek a preliminary injunction, permanent injunction, and damages. A preliminary injunction is a motion filed at the beginning of a case which essentially halts the Defendant's unlawful conduct based upon certain conditions that must be met and preserves the status quo. A permanent injunction permanently enjoins or stops former employees from taking actions such as soliciting customers, etc. Damages are monies awarded by a court or a jury for losses sustained by a Plaintiff-Employer. As to the breach of fiduciary duties/breach of duty of loyalty, this is a recognized claim in Pennsylvania. Under Pennsylvania Law, employees of a business have a fiduciary duty of loyalty to their employer that arises out of the employer/employee relationship prior to the termination of that employment relationship. This has been recognized for some time in Pennsylvania, including the case of Reading Radio, Inc., v. Fink, 833 A.2d 199, issued by the Pennsylvania Superior Court in 2003. Individual Employee-Defendants violate these fiduciary obligations to the employer by using the employer's employment time, telephones, printers, fax machines, and/or trade secret information against the interest of their employer. Such was the case in the Balmer case and lead to the decision

in favor of the employer.  The court also found against the Defendant-Employees for the claim of unfair competition. Where former employees systemically induce employees to leave their employment when the purpose is to cripple or destroy their former employer, rather than to obtain their services of that particular skill of employee, such conduct constitutes unfair competition. In the Balmer case, the Defendant-Former Employees attempted to solicit the employer's sales/marketing force for the purposes of crippling the Plaintiff-Employer.  In addition, the court found that the Defendants had participated in a civil conspiracy. In order to prosecute a claim of civil conspiracy, Plaintiffs must show that two or more persons or entities combined or agreed to do an unlawful act or to do an otherwise lawful act by unlawful means. The Plaintiff must show proof of malice, must show that the malice is without justification, and that some overt act was done in furtherance of the common purpose or design and actual legal damages resulted. This has been long recognized in Pennsylvania, including the 1979 Pennsylvania Supreme Court decision Thomas and Coal Company v. Pike Coal Company, 412 A.2d 466.

Between 2016 and present you engaged in outright illegal conduct, as set forth above, by INSERT. You have knowingly taken and conspired intellectual property, proprietary information, know-how, employees, key relationships, and INSERT

The damages you have caused are extreme, proveable, and far outweigh anything owed or claimed owed.  We are setting-off anything owed, and stand ready to litigate.  You can file a Counter-claim, and we can each spend a few hundred thousand dollars litigating, going through depositions, trial, or otherwise.

I demand that you immediately terminate fire and no longer contract in your companies or any companies related to you the following people (LISTED BELOW BUT NOT LIMITED TO) that we have picture, video and personal proof you have poached from ABC.

All rights are reserved and nothing herein shall be construed to be an 'offer' unless and until we mutually execute a legally binding agreement.

1. Jorge Martinez

2. Jose that under Jorge Martinez

3. Ivan Communications (Imani)

4 John Byrne

**Jay Walsh**
Chief Business Officer
ABC Capital Investments, LLC

Office: 267-324-3926 ext. 111
jay@abccapitalinvestments.com

Fax: 267-670-8213
Investors: 215-253-8207

**Philadelphia Office**
www.abccapitalinvestments.com
1218 N. Marshall Street
Philadelphia, PA 19122

**Baltimore Office**
www.abccapitalbaltimore.com
First Floor
3604 Eastern Avenue
Baltimore, MD 21224

<Pennsylvania-Trade-Secrets-Act.pdf>

# EXHIBIT C

Case ID: 170900577

## AFFIDAVIT OF LYNN YOUNG

COMMONWEALTH OF PENNSYLANIA     )
                                )     ss:
COUNTY OF PHILADELPHIA          )

LYNN YOUNG hereby deposes and says:

1.      My name is Lynn Young and I currently reside at 124 N. Wanamaker Street in Philadelphia, Pennsylvania.

2.      I am disabled.

3.      I have lived at 124 N. Wanamaker Street since April 2017.

4.      I understand that, until June 2017, ABC Capital Realty LLC ("ABC Realty") managed my home at 124 N. Wanamaker Street on behalf of the owners.

5.      I was not happy with ABC Realty as a property manager. ABC Realty was not helpful or responsive to my needs as a tenant. As one example, on Wednesday, April 19, 2017, ABC Realty sent a repairman to my home. The repairman shut off the water at that time and promised to return within an hour but did not do so. As a result, I was without running water. I repeatedly called ABC Realty for help but I was not able to get any response or receive any help with the situation. Eventually, on Saturday, April 22, 2017, a different repairman arrived and turned the water back on. I was without any running water from Wednesday until Saturday that week.

6.      ABC Realty's lack of responsiveness to my calls and needs for running water left me feeling isolated and alone.

7.      ABC Realty also demanded that I pay $950 per month in rent even though the lease I signed only required monthly rent of $900. I paid ABC Realty the higher amount to ensure that I could stay in the home.

8.     As a result of ABC Realty's actions, I was eventually forced to set up an escrow account for my monthly rental payments.

9.     In or around June 2017, the owners of my home informed me that they had switched property management companies and that ABC Realty was no longer managing the home.

10.     Even after I was told about the change in property management companies, however, ABC Realty repeatedly called me looking to collect the monthly rental payments. I was already making monthly rental payments to the new property management company.

11.     In the evening of July 30, 2017, a representative of ABC Realty, a Caucasian male by the name of "Bill," personally came to my home and demanded the monthly rental payment. He informed me that if I did not immediately give ABC Realty the money, I would be kicked out of my home.

12.     I felt shaken and scared by the encounter.

LYNN YOUNG

Sworn to and subscribed before me this _____ day of August 2017.

_____
Notary Public

My commission expires: July 22, 2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
HEIDI BECKER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires July 22, 2018

Case ID: 170900577

# EXHIBIT D

Dear Siena Ventures LLC,

I am writing this letter to speak upon my dealings with ABC rental and the property 943 E. Stafford Street Philadelphia PA 19138

I first went to view the property back in early May 2017 I was told if I was interested in the property I had to put down a $500 holding deposit which also went towards my initial move-in deposit. We then set a date for May 19 to do a final walk-through before lease signing which was to to happen on 5/31/2017. The date for the final walk-through was kept and the walk-through was completed. We then agreed that the lease signing would still take place on May 31, 2017. When I got to the office of ABC rental I was told that the date has been pushed back to June 2 which was not a good date for me I then was told that I have to pay the remaining $2650 asap for the property would be rented to someone else and I would lose my $500 initial holding deposit so I obliged and payed what needed to be paid we then set a date for June 8, 2017 to finally the lease.

When I arrive at the leasing office on June 8 to sign the lease I was met with rudeness and unprofessionalism I had been waiting for almost an hour and I was able to sign the lease and leave I was told that someone will meet me at the property with the keys because the keys were missed placed and the locks had to be changed. I arrived at the property in about 45 minutes after leaving the leasing office where someone was there changing the locks he handed me my key and inform me that there was a broken window in the basement and they will be out the very next day to fix it. Upon answering the property I noticed that there was no working water I immediately called the office unsuccessfully finally the next morning I was able to reach someone and inform them that there was no working with in the promises I also had an appointment with Peco to come out on the June 13, 2017. Once Peco got to the premises after evaluating the outside line and the meter bac evaluating the outside line I was then informed by Peco that they were unable to activate my electric services due to a main power source the line needing to be repaired I immediately attempted to call ABC rental unsuccessfully after hours of calling I finally got a response and was informed that someone would be out to take a look at it. A maintenance guy from ABC rental came to the promises about 730 that evening he looked that nothing he just hot wired the meter box and told me someone would be out the next day. So at this point I am still without water & electricity. Finally on the 16th of June I was contacted by Mikki from Royal properties stating that they are now the new rental management company for this property and they will work as fast as possible to solve all the problems in the home.

I would also like to state that my dealings with ABC rental were very unorganized & unprofessional, but being as thought my money was already out there and unable to be refunded as well as already giving my previous landlord a 30 moving notice I was definitely in a no win situation. It was thee worst experience ever!

# EXHIBIT E

Case ID: 170900577

**From:** dayja07 <dayja07@yahoo.com>
**Date:** September 1, 2017 at 1:00:51 AM EDT
**To:** builderphilly@gmail.com
**Subject: 3949 n franklin st, ABC Reality**

To whom this may concern

I am writing this email in reference to the mishandlings and standing issues I experienced during my time as a client of ABC Reality property management.

My troubles started at the very beginning of my business with ABC. Prior to signing the lease we were shown a walkthrough of the property. During that visit, we expresed concerns over a few things, one being a tree stump on the side of the house as well as a old heating unit that was left in the basement. We were told that by time we signed our lease and moved in that these problems would be fixed. Upon signing my lease on May 8th, 2017 and moving in May 9th, 2017, the work still wasnt done. On top of that, we discovered that we had no shower rod and the fuse was blown on our cooling/heating unit. We called ABC but to no answer on many occasions. When we did get in contact with someone we were promised that it would be taken care of that day and of course we waited still. If need be i can go into grave details of this process but i can give you tell you that the unit was moved weeks later, the shower rod didnt come until 3 weeks after moving in, and the heating unit a month after that. And they never once came to inspect or fix the problem in the backyard involving the tree stump and the water that runs into the basement when it rains. It has caused a infestation of mosquitoes. Not until we told RPM, was our landlord notified and actions taken to help fix this problem. I have to say my experience with ABC Reality has been a 0 out of 10.

If you have any questions, or need additional insight into my experiences with ABC property management please fill free to call me anytime at 215-600-5131 or email at rocchambers1203@gmail.com. I also wanted to make you aware that I understand as of June 2017, RPM became our new lease holder and for some reason ABC still requested and accepted payment from me for the month of June. I will find these documents and send them to show that we paid ABC for the month of June.

Rodney Chambers Jr
3949 N Franklin Street
Philadelphia, PA 19140
215-600-5131
rocchambers1203@gmail.com



# EXHIBIT F

From: **Briana Young** <briana.young19@yahoo.com>
Date: Mon, Aug 28, 2017 at 3:26 PM
Subject: Siena Ventures LLC
To: builderphilly@gmail.com

My name is Briana Young, in February of 2017 I contacted a guy name Kaleaf Williams who claimed to be an agent for ABC Capital realty. We spoke over Facebook at first, and then we exchanged numbers for me to see about a property that he'd posted. He was very prompt when responding, he showed me the house the same day! I didn't have the $500 he needed up front so the house was given to someone else. He showed me another house about a week later when I had the money. I gave him the $500 for the house which he had needed to take it off the market. After that he did not respond to any of my messages or call, I called ABC capital realty numerous times a day trying to get in contact with a manager or anyone who could give me answers. I never spoke with anyone!! Whoever the operator was, kept telling me that someone would call me back. They never did! They also told me that they were a private company and that I could not have my landlords direct number, I had to do everything through them. About 2 weeks had gone by before I heard anything back. (when I was told that I would hear back within 2 days!!) Once we signed the lease and we're trying to move in, we discovered that the electric couldn't be turned on because we needed some type of box from peco. We signed the lease March 13th, we didn't move in until march 25th. We had to stay in a hotel!! Once we got in the house, we found out the plumbing was bad, the outlets were all loose and most of them didn't work at all. I put in a work order for someone to come out and fix the situation, they kept giving me the run around saying that someone was coming (which they never did!) Once it got hot outside we discovered the central air didn't work! My rent is $925 and the house is not in a great neighborhood but I decided that price was okay considering it had central air. When I reached out to them about it, they sent someone out and he said that even though we had the system on the wall, that didn't mean we had central air. My baby was 10 months at the time and my son had chronic asthma. It was so hot in here to the point where we couldn't even be in here until night! Once we were contacted by Real Property Management, we told them the problems with the house and it was immediately addressed!! This is my first time renting, I'm 21, and that was a terrible first experience. I hope no one else will be able to rent from them.

# EXHIBIT G

Case ID: 170900577

--------- Forwarded message ---------
From: Nina Knight <nina@abccapitalinvestments.com>
Date: Mon, Apr 24, 2017 at 12:42 PM
Subject: RE: Theft at 2512 S 66th
To: Jay Walsh <jay@abccapitalinvestments.com>, David Gabbay <dagabbay@yahoo.com>
Cc: Jiovanna Claudio <jclaudio@abccapitalinvestments.com>, Tony Stasiak <tony@abccapitalinvestments.com>, Franco Pacelli <franco.pacelli@gmail.com>, cory@abccapitalinvestments.com


KITCHEN = $1,400

HVAC SYSTEM = $5,000

HOT WATER HEATER = $350

LABOR = $2500.


FYI – THIS PROPERTY HAS BEEN BURGLARIZED A TOTAL OF 3 TIMES. THE PRICES ABOVE ARE FOR ONE REPORT ONLY; JUST TRIPLE THE AMOUNT TO GET THE TOTAL FOR ALL 3.


Nina Knight

Executive Assistant

New Philly Construction, LLC

1218 N Marshall Street

Philadelphia, PA 19122

Office: 267-324-3926 Ext.116

Fax: 267-495-1027

Email: nina@abccapitalinvestments.com



From: Jay Walsh [mailto:jay@abccapitalinvestments.com]
Sent: Thursday, April 20, 2017 9:19 AM
To: David Gabbay <dagabbay@yahoo.com>
Cc: Nina Knight <nina@abccapitalinvestments.com>; Jiovanna Claudio <jclaudio@abccapitalinvestments.com>; Tony Stasiak <tony@abccapitalinvestments.com>;

Franco Pacelli <franco.pacelli@gmail.com>; cory@abccapitalinvestments.com
**Subject:** Re: Theft at 2512 S 66th

Nina,

Please get for him

**Jay Walsh**
Chief Operating Officer
ABC Capital Investments, LLC
Office: 267-324-3926 ext. 111
jay@abccapitalinvestments.com

Fax: 267-670-8213
Investors: 215-253-8207

**Philadelphia Office**
www.abccapitalinvestments.com
1218 N. Marshall Street
Philadelphia, PA 19122

**Baltimore Office**
www.abccapitalbaltimore.com
First Floor
3604 Eastern Avenue
Baltimore, MD 21224

On Wed, Apr 19, 2017 at 7:58 PM, David Gabbay <dagabbay@yahoo.com> wrote:

Nina,

I hope all is well.

We need an itemized list for the insurance claim of what was replaced and cost at 2512 S 66th.

Jay received payment on Monday.

Best,

David

Case ID: 170900577

# EXHIBIT H

From: **Briana Young** <briana.young19@yahoo.com>
Date: Mon, Aug 28, 2017 at 3:00 PM
Subject: Fwd: Lease statement for 6069 Regent Street - Unit 1 as of 7/1/2017 | ABC Capital Realty, LLC
To: builderphilly@gmail.com

This is from Briana Young, stating I owed them 2 months rent

Begin forwarded message:

**From:** donotreply@managebuilding.com
**Date:** July 1, 2017 at 6:59:44 AM EDT
**To:** briana.young19@yahoo.com
**Subject: Lease statement for 6069 Regent Street - Unit 1 as of 7/1/2017 | ABC Capital Realty, LLC**
**Reply-To:** donotreply@managebuilding.com

PLEASE NOTE: DO NOT REPLY TO THIS EMAIL ADDRESS
This email message was sent from a notification-only address that cannot accept incoming email.

# Lease statement as of 7/1/2017

Briana young, LATISHA YOUNG                                    Account #: 00427389
6069 Regent Street - Unit 1
Philadelphia, PA 19142

| Date | Memo | Amount | Balance |
|------|------|--------|---------|
| Prior balance | | | $0.00 |
| 4/1/2017 | Charge pro-rate for march | $208.81 | $208.81 |
| 4/1/2017 | Payment | ($210.00) | ($1.19) |
| 5/1/2017 | Charge | $925.00 | $923.81 |

| 5/5/2017 | Payment cash, Jimi | ($925.00) | ($1.19) |
| 6/1/2017 | Rent | $925.00 | $923.81 |
| 6/5/2017 | Late fee | $92.50 | $1,016.31 |
| 7/1/2017 | Rent | $925.00 | $1,941.31 |
| | | **Balance due: $1,941.31** | |

Payment is due by the 1st of the month. A one time late fee of 10% on recurring charges will be charged on the 5th of each month.

**Manage your account online: http://premierrentalsphiladelphia.managebuilding.com**

ABC Capital Realty, LLC

# EXHIBIT I

Case ID: 170900577

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ABC CAPITAL INVESTMENTS, LLC
1218 North Marshall Street
Philadelphia, PA 19122
         Plaintiff,
   v.
BTV PHIL, LLC
576 Valley Road, 311
Wayne, NJ 07470
    and
SIENNA VENTURES, LLC
576 Valley Road, 311
Wayne, NJ 07470
    and
SVPA PHIL I, LLC
576 Valley Road, 311
Wayne, NJ 07470
    and
DAVID GABBAY
29 Beverly Road
Chestnut Hill, MA 02467
    and
FRANCO PACELLI
576 Valley Road, 311
Wayne, NJ 07470
        Defendants.

NO.: 17-3548

JURY TRIAL DEMANDED

### CIVIL ACTION COMPLAINT

And now, Plaintiff ABC Capital Investments, LLC, by and through its undersigned

Counsel, herein files a civil action Complaint against all named Defendants above, jointly and

separately as follows:

### PARTIES

1.  Defendant, David Gabbay is an adult individual who upon information and belief

resides at the above captioned address, or a new address to be determined and used

for service.  This Defendant shall herein after be referred to as "Gabbay."

2. Defendant, Franco Pacelli, is an adult individual who resides at above captioned address. Hereinafter, this Defendant shall be referred to as "Pacelli."

3. The Corporate Defendants, BTV Phil, LLC, Sienna Ventures, LLC, and SVPA Phil I, LLC, upon information of belief, are duly registered limited liability companies at the above captioned address. These corporate entities have their principal place of business as captioned above and are residents and domiciled in New Jersey. These Defendants shall collectively be referred to as "Corporate Defendants."

4. For purposes of this complaint, all Defendants, corporate and individual, shall be collectively referred to as "Defendants."

5. Jurisdiction and venue are properly laid in the United States District Court of the Eastern District of Pennsylvania. In that this litigation involves factual and legal relief, that occurred in Philadelphia, Pennsylvania. Furthermore, as alleged, the parties have complete diversity of citizenship in that plaintiffs are domiciled residents of, and/or citizens of, and/or have their corporate headquarters in states that are different than defendant, and over $125,000 is at issue together with injunctive relief.

## FACTUAL BACKGROUND

6. Defendants were clients of Plaintiff and engaged in numerous detailed, complex real estate acquisition, development, and rental transactions through Plaintiff and affiliated entities of Plaintiff.

7. Defendants and Plaintiff, at all times hereto, had fiduciary obligations to one another to work together in good faith, deal fairly, and all dealings were for the proper manifestation of the client relationship which, essentially could be described

as Plaintiff and Plaintiff's affiliates securing, renovating, purchasing, and leasing various properties in Philadelphia County for Defendants.

8. Defendants, acting as Plaintiff's client, went to the following properties during acquisition, renovation, or other stages and ostensibly made it appear as though they were doing due diligence as Plaintiff's clients. But, without Plaintiff and Plaintiff's affiliates knowledge, were, upon information and belief, surreptitiously identifying proprietary business methods, trade secrets, customer lists, key employees or, subcontractors and/or laborers, so that they could poach, steal, all said concepts and employees and/or laborers and utilize them for their own business benefit undermining the client relationship with Plaintiff including but not limited to the following properties:

   a.   579 Herman Street in Philadelphia, Pennsylvania;

   b.   943 East Stafford Avenue in Philadelphia, Pennsylvania;

   c.   1006 North 67th Street in Philadelphia, Pennsylvania;

   d.   2214 Melvin Street in Philadelphia, Pennsylvania;

   e.   2512 South 60th Street in Philadelphia, Pennsylvania;

   f.   2524 Bonaffon Street in Philadelphia, Pennsylvania;

   g.   5221 North American Street in Philadelphia, Pennsylvania;

   h.   5526 Blakemore Street in Philadelphia, Pennsylvania;

   i.   5782 Stewart Street in Philadelphia, Pennsylvania;

   j.   6613 Gerry Avenue in Philadelphia, Pennsylvania;

   k.   6615 Gerry Avenue in Philadelphia, Pennsylvania;

   l.   7115 Theodore Street in Philadelphia, Pennsylvania;

m. 7349 Garman Street in Philadelphia, Pennsylvania;

n. 618 East Stafford Street in Philadelphia, Pennsylvania;

o. 1366 Narragansett Street in Philadelphia, Pennsylvania;

p. 1525 Overington Avenue in Philadelphia, Pennsylvania;

q. 3949 Franklin Street in Philadelphia, Pennsylvania;

r. 4909 North Smedley Street in Philadelphia, Pennsylvania;

s. 6069 Regent Avenue in Philadelphia, Pennsylvania;

t. 5537 Boyer Street in Philadelphia, Pennsylvania;

u. 5762 Hummer Street in Philadelphia, Pennsylvania;

v. 5912 West Oxford Street in Philadelphia, Pennsylvania;

w. 6321 Hazel Street in Philadelphia, Pennsylvania;

x. 4906 Smedley Street in Philadelphia, Pennsylvania;

All of the aforesaid properties shall be collectively referred to as "The Properties" for purposes of this litigation.

9. Defendants walked through said properties, met with, spoke with, and under false pretenses, both at the Plaintiff's headquarters, and at the property sites, identified key laborers, employees and staff that they have poached and stolen in bad faith, including but not limited to Amani Cox – Lane, Caliph Clemmones, Jorge Martinez, Jose Smith, Jorge's helper [last name to be identified], Donald Dempster, and Nelson Rios. Discovery may produce more laborers, individuals, and other poached and wrongfully taken property.

10. As a direct and proximate result, Plaintiff seeks all available and legal equitable relief, had incurred and continues to incur material damages, and sues Defendants, collectively, for the following claims.

## COUNT I:

### VIOLATION OF THE PENNSYLVANIA PROPRIETARY TRADE SECRETS ACT 12Pa.C.S. AND 18Pa.C.S. OTHERWISE KNOWN AS THE PENNSYLVANIA TRADE SECRETS AND OFFENSE OF THEFT OF TRADE SECRETS ACT OF FEBRUARY 19, 2004, #2014

11. Plaintiff incorporates by reference all of the aforesaid paragraphs as set forth at length herein.

12. The Pennsylvania Trade Secrets and Offense of Theft of Trade Secrets Act of February 19, 2004, #14, otherwise found at 12Pa.C.S. and 18Pa.C.S. is incorporated by reference, and specifically prevents the unauthorized, improper, and bad faith poaching of business methods, key employees, laborers, and other business related trade secrets essential to Plaintiff.

13. As set forth above, for working surreptitiously, collectively, and individually, Defendants have intentionally violated the aforesaid capital act, and as a result have cause substantial damage both financial and non-financial, and said damages continue to accrue.

14. Defendants are liable under said act for injunctive relief, damages, and attorney's fees.

## COUNT II:

### CIVIL CONSPIRACY

15. Plaintiff incorporates by reference all of the aforesaid paragraphs as set forth at length herein.

16. As set forth above, Defendants acting as clients of Plaintiff, improperly, intentionally, and illegally conspired with each other and others to be determined through discovery, to poach, take, steal, and otherwise convert for their own use key employees, subcontractors, laborers, business methods, and other proprietary data and information.

17. As a direct and proximate result, Plaintiff has continued to incur substantial equitable and monetary damages, which continue to accrue.

18. Defendants had no justification as a matter of law for their actions.

## COUNT III:

### TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS

19. Plaintiff incorporates by reference all of the aforesaid paragraphs as set forth at length herein.

20. As set forth above, Defendants acting as clients of Plaintiff, improperly, intentionally, and illegally conspired with each other and others to be determined through discovery, to poach, take, steal, and otherwise convert for their own use key employees, subcontractors, laborers, business methods, and other proprietary data and information.

21. As a direct and proximate result, Plaintiff has continued to incur substantial equitable and monetary damages, which continue to accrue.

22. Defendants had no justification as a matter of law for their actions.

23. Defendants intentionally interfered with ongoing contractual relationships and other key relationships between Plaintiff and multiple third parties, including the employees, subcontractors or laborers named above.

## COUNT IV:

## BREACH OF FIDUCIARY DUTY

24. Plaintiff incorporates by reference all of the aforesaid paragraphs as set forth at length herein.

25. As set forth above, Defendants acting as clients of Plaintiff, improperly, intentionally, and illegally conspired with each other and others to be determined through discovery, to poach, take, steal, and otherwise convert for their own use key employees, subcontractors, laborers, business methods, and other proprietary data and information.

26. As a direct and proximate result, Plaintiff has continued to incur substantial equitable and monetary damages, which continue to accrue.

27. Defendants had no justification as a matter of law for their actions.

28. Defendants intentionally interfered with ongoing contractual relationships and other key relationships between Plaintiff and multiple third parties, including the employees, subcontractors or laborers named above.

## COUNT V:

## CIVIL CONVERSION

29. Plaintiff incorporates by reference all of the aforesaid paragraphs as set forth at length herein.

30. As set forth above, Defendants acting as clients of Plaintiff, improperly, intentionally, and illegally conspired with each other and others to be determined through discovery, to poach, take, steal, and otherwise convert for their own use key employees, subcontractors, laborers, business methods, and other proprietary data and information.

31. As a direct and proximate result, Plaintiff has continued to incur substantial equitable and monetary damages, which continue to accrue.

32. Defendants had no justification as a matter of law for their actions.

33. Defendants intentionally interfered with ongoing contractual relationships and other key relationships between Plaintiff and multiple third parties, including the employees, subcontractors or laborers named above.

**WHEREFORE,** Plaintiff respectfully requests that Defendants be held jointly and severally liable for their illegal actions as outlined above, that injunctive relief is issued against the Defendants, and damages are awarded against Defendants that are not dischargeable in bankruptcy for their statutory violations and illegal conduct in excess of $125,000.00 together with all costs of suit and such other relief as this Court may deem just and equitable.

/s/ David T. Shulick
*SHULICK LAW*
BY: David T. Shulick, Esquire
*Attorney for Plaintiff*

Dated: July 31, 2017

Case ID: 170900577

## VERIFICATION

I, Franco Pacelli, on behalf of Siena Ventures LLC, SV PA PHI 1 LLC, BTV PHI 1 LLC and BTV PHIL 3 LLC, hereby state, subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Dated: August 8, 2017    SEPT.

FRANCO PACELLI